UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ESTATE OF AMILCAR PEREZ LOPEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREG SUHR, et al., <br><br> Defendants. | Case No. 15-cv-01846-HSG <br><br> **ORDER PARTIALLY STAYING DISCOVERY AND BIFURCATING DERIVATIVE LIABILITY CLAIMS** <br><br> Re: Dkt. Nos. 20 & 21 |
|---|---|

Before the Court are the motion to stay discovery and disclosures and motion to bifurcate trial and discovery filed by Defendants Police Chief Greg Suhr ("Chief Suhr"), City and County of San Francisco ("San Francisco"), San Francisco Police Department ("SFPD"), Police Officer Craig Tiffe, and Police Officer Eric Reboli (together, "Defendants"). Dkt. Nos. 20 ("MTS") & 21 ("MTB"). Plaintiffs Estate of Amilcar Perez Lopez, Margarita Lopez Perez, and Juan Perez (together, "Plaintiffs") have filed an opposition to both motions, Dkt. Nos. 25 ("MTS Opp.") & 26 ("MTB Opp."), and Defendants have replied, Dkt. Nos. 27 ("MTS Reply") & 28 ("MTB Reply").

Previously, the Court entered two temporary stays of all discovery and disclosures pending criminal charging decisions by the San Francisco District Attorney's Office ("District Attorney") as to Defendants Tiffe and Riboli (together, "Officers"). Given that no charging decisions have yet been made, the Court must decide whether any further stay of discovery and disclosures is warranted. For that reason, the Court also will decide Defendants' motion to bifurcate Plaintiffs' claims against the Officers from their *Monell* and supervisory liability claims.

The Court has carefully considered the arguments of the parties, both in their briefs and in at oral argument. For the reasons set forth below, the Court **STAYS** all direct discovery to the Officers, including written discovery and depositions, until June 1, 2016. At that time, the Court

1   will consider whether any additional stay is appropriate. Additionally, and in light of that Order,
2   the Court **GRANTS** Defendants' motion to bifurcate Plaintiffs' *Monell* and supervisory liability
3   claims from their claims involving the Officers given their largely derivative nature. On that
4   basis, the Court also **STAYS** all discovery and disclosures relating to those claims until after
5   Plaintiffs' claims against the Officers are resolved, whether by settlement or trial. To the extent
6   that discovery pertains to the individual claims, it may proceed under the limitations set out above,
7   subject to the exercise of privilege claims or other objections.

**I.   BACKGROUND**

   **A.   Factual Allegations**

On February 26, 2015, at approximately 9:54pm, Amilcar Perez Lopez ("Perez Lopez") was walking to his apartment when he was confronted by a man, who began following him and taunting him. Dkt. No. 22 ("Am. Compl.") ¶ 20. An altercation ensued between the two men. *Id.* The altercation ended, and Perez Lopez began walking away. *Id.* While he continued to walk home, the Officers "surreptitiously rushed" at him from behind. *Id.* One of the Officers grabbed Perez Lopez and secured him in a "bear-hug hold" around his upper body. *Id.* The Officers were wearing civilian clothes at the time and did not identify themselves as police officers. *Id.* Perez Lopez was unable to determine that the Officers were police and broke free by wriggling away. *Id.* He then fled toward the street between two vehicles parked at the curb. As Perez Lopez ran away from them, the Officers pointed their firearms at him. *Id.* ¶ 21. One of the Officers shot Perez Lopez in the back five times, while the other Officer shot him once in the back of the head, killing him. *Id.* Perez Lopez had run only a couple of feet away when he was shot. *Id.*

Later that evening, Police Chief Suhr arrived at the scene of the shooting along with other officers and began their investigation. *Id.* ¶ 22. Police Chief Suhr told a local news station that Perez Lopez had "lunged at the officer with a knife overhead." *Id.* But an autopsy conducted by the San Francisco Office of the Medical Examiner indicated that Perez Lopez had been shot in the back, as corroborated by two eyewitnesses. *Id.* ¶ 24. Despite that evidence, Police Chief Suhr declared at a town hall meeting on March 2, 2015, that the Officers "were approximately 5 to 6 feet away when [Perez Lopez] charged at one of the officers with the knife raised over head." *Id.*

He also presented a diagram indicating this official version of the shooting. *Id.* Plaintiffs allege that Police Chief Suhr knowingly misinterpreted the facts to cover up Perez Lopez's murder. *Id.*

Plaintiff further alleges that the City and County of San Francisco ("San Francisco") and Police Chief Suhr had long known of the propensity of the San Francisco Police Department ("SFPD"), including the Officers, to callously and recklessly use excessive force against members of the public, targeting minority groups in particular, and to engage in deceitful misconduct. *Id.* ¶ 26 (setting forth earlier incidents of excessive force and racism by the SFPD and the Officers).

### B. Procedural History

Plaintiffs filed this action on April 24, 2015. Dkt. No. 1. The operative complaint asserts § 1983 claims against the Officers for excessive force and unreasonable seizure under the Fourth Amendment, a municipal liability claim under § 1983 against San Francisco and the SFPD for unconstitutional customs and practices, a supervisory liability claim under § 1983 against Chief Suhr for ratification of the Officers' shooting and for the failure to train, supervise and discipline the Officers, and a § 1983 claim against all Defendants for interference with familial integrity in violation of substantive due process, assault and battery, and survivorship. Defendants filed the instant motions to stay discovery and disclosures and to bifurcate on September 22, 2015.

#### 1. San Francisco's Motion to Stay Disclosures and Discovery

In its motion to stay, San Francisco represented that both the SFPD and the San Francisco District Attorney's Office ("SFDAO") were conducting criminal investigations into the shooting. MTS at 3. San Francisco moved to stay disclosures and discovery pending a charging decision from the SFDAO based primarily on its concern that permitting Plaintiffs to acquire certain materials, especially the SFPD's confidential investigative file, would compromise the integrity of the investigations. Specifically, San Francisco argued that this discovery could affect witnesses' willingness to give statements and otherwise participate in the investigations. *Id.* at 3-7. San Francisco also asserted that discovery would impose an unfair burden on the Officers, who likely would have to assert their Fifth Amendment right to avoid self-incrimination in response to Plaintiff's requests, resulting in adverse inferences against them as well as the derivative liability defendants. *Id.* at 7-9. And San Francisco contended that the requested stay would promote

judicial efficiency and would not prejudice Plaintiffs. *Id.* at 9-12.

At that time, San Francisco anticipated that the SFPD would finish their investigation by September 30, 2015, but that the investigation would remain open until the District Attorney's Office made a charging decision. *Id.* at 3.  The SFDAO investigation, which is independent of the SFPD investigation, was "expected to continue for a number of months," but San Francisco predicted that it would last until early 2016, based on the timing of charging decisions in similar past cases. *Id.* at 5, 11.

In their opposition, Plaintiffs argued that there is nothing inherently objectionable about concurrent civil and criminal actions, the burden is on the Defendants to show an exception, and Defendants cannot do so given that there are no pending criminal charges against the Officers and no reason to suspect there will be. MTS Opp. at 5-6.  To that effect, Plaintiffs pointed out that when the motions were filed, more than seven months had already passed since the shooting occurred and there was still no charging decision, making the risk of any adverse inference from pleading the Fifth Amendment increasingly hypothetical. *Id.* at 7-8.  In addition, Plaintiffs disputed that there is any evidence that discovery would hamper the investigations, challenging the notion that their counsel acted improperly in interviewing witnesses through informal means. *Id.* at 8-9.  Plaintiffs also contended that any further delay would prejudice them, citing the inevitably fading memories of witnesses, and argued that they and the public have a substantial right in the speedy prosecution of their civil action in light of the seriousness of the claims. *Id.* at 9-10.

### 2. San Francisco's Motion to Bifurcate

Separately, San Francisco moves to bifurcate discovery and trial on Plaintiffs' *Monell* and supervisory liability claims from the claims against the Officers.  Because liability under *Monell* and the supervisory claims generally requires a finding of underlying individual liability, San Francisco contends that bifurcation will avoid the unnecessary use of Court and party resources on the derivative claims if the individual claims ultimately fall short. MTB at 4-6.  Additionally, San Francisco contends that bifurcation allows the Officers to avoid the undue prejudice that would flow from evidence of other alleged police misconduct. *Id.* at 7-9.

4

1    Plaintiffs respond that bifurcation is inappropriate because the individual and derivative
2    claims are intertwined and would result in duplicative trials, undermining judicial economy.  MTB
3    Opp. at 5.  Plaintiffs also argue that even if bifurcation of trial is appropriate, there is no basis to
4    stay discovery on the derivative claims until after trial because the evidence that they are seeking
5    is identical for both sets of claims.  *Id.* at 4-5.  Plaintiffs are not seeking, they assert, discovery into
6    unrelated misconduct, but whether there is a pattern of bias in the SFPD that caused this shooting
7    to occur.  *Id.* at 7-9.  Plaintiffs also argue that supervisory liability is not dependent on a finding of
8    individual liability.  *Id.* at 6-7.  Plaintiffs allege that Chief Suhr conducted an improper and
9    insufficient investigation of the shooting, which they claim suffices to show supervisory liability.
10   *Id.*

### 3.    Previous Stay Order and Stipulated Extensions

12   On November 9, 2015, the Court stayed all disclosures and discovery in this matter for 60
13   days.  Dkt. No. 34.  On December 9, 2015, the Court extended that stay of discovery until January
14   12, 2016, when the parties were scheduled to appear for a status conference.  Dkt. No. 39.  During
15   that conference, the parties stipulated to extend the discovery stay until March 22, 2016, when the
16   parties again were scheduled to appear for a status conference.  Dkt. No. 44.  On March 22, 2016,
17   the Court directed the parties to file a discovery plan by April 19, 2016, produce non-*Monell*
18   initial disclosures by April 26, 2016, and appear on the latter date for a status hearing.  Dkt. No.
19   47.

## II.    LEGAL STANDARD

### A.    Motion to Stay Discovery

22   A district court's "power to stay proceedings is incidental to the power inherent in every
23   court to control the disposition of the causes on its docket with economy of time and effort for
24   itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Using this
25   power, one case may be stayed in favor of another.  *Leyva v. Certified Grocers of Cal., Ltd.*, 593
26   F.2d 857, 863-64 (9th Cir. 1997) ("A trial court may, with propriety, find it is efficient for its own
27   docket and the fairest course for the parties to enter a stay of an action before it, pending
28   resolution of independent proceedings which bear upon the case.  This rule applies whether the

1  separate proceedings are judicial, administrative, or arbitral in character, and does not require that
2  the issues in such proceedings are necessarily controlling of the action before the court.").

3  "The Constitution does not ordinarily require a stay of civil proceedings pending the
4  outcome of criminal proceedings." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th
5  Cir. 1995) (citing *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989)).
6  "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous]
7  parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence." *Id.*
8  (brackets original). "Nevertheless, a court may decide in its discretion to stay civil proceedings
9  . . . when the interests of justice seem [] to require such action." *Id.* (brackets in original). "The
10 decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be
11 made in light of the particular circumstances and competing interests involved in the case. This
12 means the decisionmaker should consider the extent to which the defendant's fifth amendment
13 rights are implicated." *Id.* (internal quotation marks omitted). "In addition, the decisionmaker
14 should generally consider the following factors: (1) the interest of the plaintiffs in proceeding
15 expeditiously with this litigation or any particular aspect of it, and the potential prejudice to
16 plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on
17 defendants; (3) the convenience of the court in the management of its cases, and the efficient use
18 of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the
19 interest of the public in the pending civil and criminal litigation." *Id.* at 324-25 (internal citations
20 and quotation marks omitted).

21 When a party moves to stay only discovery and not the entire proceeding, the "good cause"
22 standard of the protective order provision of Federal Rule of Civil Procedure 26(c) controls. *Gray*
23 *v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990); *see also* Fed. R. Civ. P. 26(c) ("The
24 court may, for good cause, issue an order to protect a party . . . forbidding inquiry into certain
25 matters, or limiting the scope of disclosure or discovery to certain matters[.]"). "A party seeking a
26 stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be
27 denied." *Id.* (quoting *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). When a
28 discovery stay is sought in light of an actual or potential parallel criminal proceeding, the Court

6

frames its analysis of whether Defendants have met their "heavy burden" under Rule 26(c) using the framework set forth in *Keating*. *See, e.g.*, *Square 1 Bank v. Lo*, No. 12-cv-05595, 2014 WL 7206874, at *1 (N.D. Cal. Dec. 17, 2014) (applying *Keating* analysis to find that a discovery stay was appropriate pending resolution of a parallel and ongoing criminal proceeding).

### B. Motion to Bifurcate

Federal Rule of Civil Procedure 42(b) provides that: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims[.]" Rule 42(b) confers "broad authority," *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001), and "giv[es] the district court virtually unlimited freedom to try the issues in whatever way trial convenience requires." Charles A. Wright, *et al.*, 9A Fed. Prac. & Proc. (Trials) § 2387 (3d ed. rev. 2015). The Ninth Circuit has held that implicit in the power of courts to bifurcate trial under Rule 42(b) is the "power to limit discovery to the segregated issues" because "[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) (per curiam); *accord Craigslist Inc. v. 3Taps, Inc.*, 942 F. Supp. 2d 962, 982 (N.D. Cal. 2013).

## III. DISCUSSION

### A. Motion to Stay

Applying the factors set forth in *Keating v. Office of Thrift Supervision*, the Court finds that there is good cause under Rule 26(c) to again temporarily stay discovery in this case, but only with respect to discovery directed at the Officers, including written discovery and depositions, because that discovery might require them to invoke their Fifth Amendment privilege against self-incrimination. The Court discusses its findings on each element of the *Keating* analysis in turn.

Under the first *Keating* factor, the Court finds that Plaintiffs have a non-negligible interest in proceeding expeditiously with the civil litigation. *See* F.3d at 324. While there may not have been any "genuine prejudice from delay" in September 2015, when San Francisco first filed its motion, it is now April 2016. *See* MTS at 10. San Francisco's prediction that the Court could reasonably expect a charging decision by early 2016 has not come to pass. *See id.* at 11. Nearly


14 months have passed since the shooting of Perez Lopez, and the Court agrees with Plaintiffs that the memories of witnesses, especially those who may not be cooperating with the SFPD, may fade with time. *See McCormick v. Rexroth*, No. C 09-4188, 2010 WL 934242, at *3 (N.D. Cal. Mar. 15, 2010) (recognizing the "danger that any testimony will be lost as a result of the stay" in a civil proceeding pending criminal trial). Accordingly, this factor weighs against any further stay.

The second factor, however, which considers the burden on the party seeking the stay if no stay is entered, weighs heavily in favor of a further stay on all discovery directed at the Officers. San Francisco's concern is that prudence will require the Officers to invoke the Fifth Amendment in response to discovery requests, which would burden them by triggering adverse inferences against them at trial. Plaintiffs respond that the Officers have no absolute right to avoid adverse inferences in their civil action if they invoke the Fifth Amendment. And, Plaintiffs argue, the need to assert the Fifth Amendment is speculative given that no charges have been filed.

Plaintiffs are correct that "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *See Keating*, 45 F.3d at 326. To the same effect, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *SEC v. Alexander*, No. 10-cv-04535, 2010 WL 5388000, at *3 (N.D. Cal. Dec. 22, 2010) (quoting *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980)). "In such cases, allowing the civil action to proceed may undermine the defendant's Fifth Amendment privilege, expand criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the defense strategy to the prosecution before the criminal trial, or cause other prejudice." *Id.* The Ninth Circuit has held that a civil defendant's interest under the Fifth Amendment is "a far weaker one where no indictment has been returned." *Molinaro*, 889 F.2d at 902; *see also Gen. Elec. Co. v. Liang*, No. CV 13-08670, 2014 WL 1089264, at **1-7 (C.D. Cal. Mar. 19, 2014) (denying motion to stay action because pending criminal investigation was not sufficient to show overriding prejudice); *eBay Inc. v. Digital Point Sols.*, No. C 08-4052, 2010 WL 702463, at **2-4 (N.D. Cal. Feb. 25, 2010) (denying motion to stay action because "[p]otentially criminal conduct should not serve as a

8

1  shield against a civil law suit and prevent plaintiff from expeditiously advancing its claim").

2  But San Francisco is seeking only a stay of discovery and not a complete stay of the action.
3  For that reason, it need only show "good cause" under the protective order provision of Rule
4  26(c). To determine whether good cause is present, the Court must consider whether there is an
5  actual risk that adverse inferences will be drawn against the Officers in this case. While it is true
6  that "in civil proceedings adverse inferences can be drawn from a party's invocation of th[e] Fifth
7  Amendment right," adverse inferences are appropriate only "when independent evidence exists of
8  the fact to which the party refuses to answer." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d
9  1258, 1264 (9th Cir. 2000) (citing *Baxter v. Palmigiano*, 232 F.3d 1258, 1264 (1976)). In other
10 words, "when there is no corroborating evidence to support the fact under inquiry, the proponent
11 of the fact must come forward with evidence to support the allegation, otherwise no negative
12 inference will be permitted." *Id.* Additionally, "no negative inference can be drawn against a civil
13 litigant's assertion of his privilege against self-incrimination unless there is a substantial need for
14 the information and there is not another less burdensome way of obtaining that information." *Id.*
15 at 1265. Ultimately, "a case-by-case analysis with a balancing test which weighs the need for the
16 information being sought (and consequently its admissibility at trial) against the afforded
17 constitutional protections is exactly what the law requires from the district court." *Id.* at 1267.

18 In this case, there is a substantial risk that if the Officers invoke the Fifth Amendment,
19 adverse inferences will be drawn against them. Plaintiffs will likely serve written discovery on the
20 Officers and seek to depose them, inquiring as to a variety of factual issues regarding the shooting.
21 If the Officers answer without invoking the Fifth Amendment, the District Attorney could review
22 those answers as part of its criminal investigation. For that reason, caution would counsel the
23 Officers to invoke the Fifth Amendment to avoid the risk of self-incrimination. And because there
24 are apparently eyewitnesses to the shooting who may be able to corroborate Plaintiffs' account,
25 adverse inferences may be warranted by the Officers' invocation of their rights. *See Glanzer*, 232
26 F.3d at 1264-65. Accordingly, this factor provides good cause to stay discovery directed to the
27 Officers.

28 San Francisco contends that a discovery stay is also warranted with respect to the SFPD's

9

investigative file because it would create a substantial burden on the integrity of the investigation. While the Court appreciates San Francisco's concern in this regard, those concerns are adequately addressed by the official information privilege, to the extent that it applies. *See Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995); *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987) (explaining that courts can protect ongoing criminal investigations effectively under the official-information privilege where necessary). For the same reason, the Court does not find that San Francisco's concern that witnesses will be tainted requires a discovery stay, as there is now a stipulated protective order in place. *See* Dkt. No. 43. In sum, the Court identifies no significant burden that proceeding with the case would place on Defendants other than the substantial Fifth Amendment concerns of the Officers.

Under the third *Keating* factor, the Court finds that it would be most convenient for case management to temporarily stay discovery directed at the Officers. "[T]his factor typically weighs against the granting of a stay," *Liang*, 2014 WL 1089264, at *6, because "the court has an interest in clearing its docket," *Molinaro*, 889 F.2d at 903. But that is not the case here because the Court is not entertaining a complete stay of the action. And a temporary stay of discovery directed at the Officers avoids the prospect of potentially having to reopen any discovery prevented by the Officers' assertion of their Fifth Amendment rights if they are not ultimately charged. There is no similar efficiency, however, with respect to other discovery. Accordingly, this factor also weighs in favor of staying discovery directed at the Officers.

The fourth *Keating* factor does not appear to apply in this case. There are no nonparties that appear to have a significant or unrepresented interest in the outcome of this litigation.

Finally, under the fifth *Keating* factor, the Court finds that the public has a strong interest in resolving the civil litigation in light of the fact that no criminal litigation is pending. *See Molinaro*, 889 F.2d at 903 (finding no abuse of discretion by the district court in concluding that "the public would be frustrated by further delay" where there was no indictment pending). For that reason, this factor weighs against any stay.

Weighing all of these factors, the Court concludes that the Fifth Amendment interests of the Officers and the efficiencies generated by staying discovery directed at the Officers outweigh

1   Plaintiffs' and the public's interest in resolving this litigation as quickly as possible. The only real
2   risk of prejudice to Plaintiffs flows from the risk that witnesses' memories will fade as more time
3   passes. But the Court is allowing third-party discovery to proceed in full, as the parties appear to
4   contemplate in their discovery plan. *See* Dkt. No. 49 at 1-2. Accordingly, the Court temporarily
5   stays any and all discovery directed at the Officers until June 1, 2016.

### B.  Motion to Bifurcate

Exercising its discretion under Rule 42(b), the Court finds that it is appropriate to bifurcate trial of the individual claims and the *Monell* municipal and supervisory liability claims in this case. Bifurcation will preserve substantial judicial and party resources in the event the Officers are not found individually liable. For the same reason, under Rule 26(c), the Court also stays any and all discovery that pertains exclusively to those derivative liability claims.

As other courts in this district have held under similar circumstances, "bifurcation is conducive to expedition and economy because a finding that the individual officers did not deprive [the plaintiff] of his constitutional or statutory rights or negligently cause his death is dispositive of plaintiffs' claims against the City and Chief[.]" *Boyd v. City and Cnty. of San Francisco*, No. C-0405459, 2006 WL 6800556, at *2 (N.D. Cal. Mar. 14, 2006). This is because "neither *Monell* . . . nor any other of [the Supreme Court's] cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [the individual officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (holding, where individual officers were entitled to judgment on ground they did not use excessive force, municipality was entitled to judgment on claim municipality failed to adequately train officers). The same is true with respect to Plaintiff's supervisory liability claims against Chief Suhr. *See Trevino v. Gates*, 99 F.3d 911, 920-21 (9th Cir. 1996) ("We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of *the acts of others who caused the constitutional violation*.") (italics added). And there are no

11

1    countervailing efficiencies.  If the Officers are found liable, collateral estoppel will establish that
2    fact in the second trial.

3          Plaintiffs nonetheless suggest that bifurcation would be an abuse of discretion, citing *De
4    Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993).  In that case, a § 1983 plaintiff
5    sued two police officers and their police chief, alleging that they conspired with one another to
6    violate his civil rights when he was shot and arrested.  *Id.* at 1420.  The plaintiff also asserted
7    municipal liability claims.  *Id.*  The district court bifurcated the plaintiff's conspiracy claim against
8    the two officers from the same claim against the police chief, the latter of which was tried with the
9    municipal claims.  *Id.* at 1421.  The Ninth Circuit reversed, holding that "[b]ecause [the plaintiff]
10   alleged that all of the defendants were individually liable for the same constitutional injury, there
11   was no reason to try the issue of [the police chief's] liability in a separate phase."  *Id.*  The court
12   found that bifurcation prejudiced the plaintiff because, after the jury found against him in the trial
13   against the two officers, the municipal liability claims became moot and he was never allowed to
14   put on any evidence of the alleged conspiracy with respect to the police chief.  *Id.*

15         *De Anda* is clearly distinguishable from the present case.  Plaintiffs do not allege that Chief
16   Suhr conspired with the Officers before the shooting to violate Perez Lopez's civil rights.  Instead,
17   they allege supervisory liability on a theory of ratification and for the general failure to train,
18   supervise and discipline the Officers.  In short, Plaintiffs' claims against Chief Suhr are
19   conceptually distinct from their claims against the Officers: their ratification theory involves only
20   post-shooting facts, while their failure to train theory involves pre-shooting facts that do not
21   directly relate to Perez Lopez's case.  Without prejudging the issue, the Court does not see how
22   any evidence of Chief Suhr's alleged ratification of the Officers' actions is likely to be admissible
23   against them.  The same appears true with respect to any evidence that Plaintiffs might introduce
24   against the SFPD, and San Francisco generally, that tends to show unconstitutional policies or
25   customs.

26         The *De Anda* court cited *Larez v. City of Los Angeles*, 946 F.2d 630, 640 (9th Cir. 1991),
27   as an example of when trial bifurcation is appropriate in police civil rights actions.  *See De Anda*,
28   7 F.3d at 1421.  In *Larez*, a family of § 1983 plaintiffs sued six police officers for excessive force

1 while executing a search warrant. *Id.* at 634-35. As here, Plaintiffs also sued the police chief
2 (alleging that he had signed a letter stating that none of their complaints would be sustained,
3 ratifying the illegal search) and the municipality (alleging that it had perpetuated unconstitutional
4 polices or customs of excessive force, illegal searches, and inadequate investigation of citizen
5 complaints). *Id.* at 635. The district court bifurcated the trial of the six police officers from the
6 trial of the police chief and the municipality, and the Ninth Circuit affirmed. *Id.* The approach
7 affirmed in *Larez* applies equally in this case.

8 Finally, the same judicial efficiencies that warrant bifurcation also provide good cause for
9 a stay of discovery under Rule 26(c) with respect to the supervisory and municipal liability claims
10 until Plaintiffs' claims against the Officers are adjudicated. "[I]n order to prove the unlawful
11 municipal policies alleged, plaintiffs may require discovery with respect to, *inter alia*, incidents
12 involving non-party officers. Because such discovery has no apparent relevance to the claims
13 against the individual officer defendants herein, a stay will conserve the resources of the parties
14 and the Court by deferring such discovery until such time as one or more of the individual officers
15 has been found liable or entitled to qualified immunity." *Boyd*, 2006 WL 680556, at *3. To the
16 extent that Plaintiffs can show that discovery directly pertains to the individual claims, it may
17 proceed.

18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

## IV. CONCLUSION

For the foregoing reasons, under its Rule 26(c) authority, the Court hereby **STAYS** all discovery directed at the Officers, including written discovery and depositions, until June 1, 2016, at which point the Court will decide whether to extend that stay any further.  Under its Rule 42(b) authority, the Court also **BIFURCATES** the trial of the individual liability claims against the Officers (for excessive force, assault and battery, interference with familiar integrity, wrongful death, and survivorship) from the *Monell* and supervisory liability claims against San Francisco, Chief Suhr, and the SFPD.  Because the Court finds that trial bifurcation is warranted, the Court also **STAYS** discovery on any issues that pertain exclusively to the *Monell* and supervisory liability claims.

**IT IS SO ORDERED.**

Dated: 4/26/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge